UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| BARBARA ANDERSEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 17 cv 5761 |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| VILLAGE OF GLENVIEW, et al., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed herein, Defendant Dr. Morris Kharasch's ("Kharasch") Motion for Protective Order [114] is granted.[1] Plaintiff Barbara Andersen ("Plaintiff") filed the instant suit, alleging that the Defendants engaged in a pattern of activities designed to give Plaintiff's ex-husband, Defendant Rick Gimbel ("Gimbel"), an advantage in his quest to obtain sole custody of their two children. At its core, Plaintiff's 70-page complaint claims that Gimbel's position as an E.R. physician allowed him to be in regular contact with police officers from the Village of Glenview, and that Gimbel conspired with Defendant Detective Yakov Popkov ("Popkov") to have Plaintiff falsely arrested and maliciously prosecuted on stalking charges. It is Plaintiff's contention that Gimbel orchestrated the false arrest in order to undermine Plaintiff in a custody dispute between Plaintiff and Gimbel. Two of the counts against Plaintiff were dismissed, and she was acquitted of the third after a bench trial.[2] Kharasch was Gimbel's supervisor and the chief of emergency medicine for NorthShore University Health System. Plaintiff alleges that Kharasch was interviewed by the Glenview Police Department in response to Plaintiff's complaints that Gimbel was using his connections with the police to harass

---

[1] All Defendants joined the instant motion on the record on April 17, 2018. The Court's analysis and ruling applies equally to all Defendants and their litigation counsel.
[2] After two of the felony charges were dropped, the remaining felony charge for telephone harassment with intent to kill was downgraded to simple misdemeanor telephone harassment prior to Plaintiff's criminal trial.

Plaintiff, and that Kharasch told the Glenview Police Department that Plaintiff was mentally ill. Plaintiff's complaint brings the following causes of action:[3] 1) Intentional Infliction of Emotional Distress against Popkov, Gimbel, and Kharasch; 2) Deprivation of Constitutional Right to Parent-Child Society against Popkov; 3) Civil Conspiracy in the Deprivation of Constitutional Right to Parent-Child Society against Popkov and Gimbel; 4) federal and state law claims for False Arrest and Imprisonment against Popkov, 5) Civil Conspiracy for False Arrest and Detainment against Popkov and Gimbel; 6) federal and state law claims for Malicious Prosecution against Popkov; 7) Civil Conspiracy for Malicious Prosecution against Popkov and Gimbel; 8) Intentional Infliction of Emotional Distress Relative to Refusal to Drop Frivolous Criminal Charges against Gimbel; and 9) a *Monell* claim against the Village of Glenview for malicious prosecution.

Discovery in this matter has been extraordinarily contentious. The Court went so far as to require the parties to have their Rule 37 conferences on the record, in the hopes that recording the proceedings would encourage the parties to remain civil. (Dkt. 99.) Having reviewed the transcripts of those conferences, the Court's hopes have been dashed, and all parties were admonished on the record at the most recent status hearing before the Court for their equal role in fostering the atmosphere of distrust and rancor that has pervaded this case. Presently before the Court is Kharasch's Motion for Protective Order, which seeks to bar "discovery of litigation counsel's communications and providing that such communications need not be identified on privilege logs." (Dkt. 114 at 1.) Plaintiff objects to Kharasch's motion and has filed a brief in opposition.

Although the parties spent the vast majority of their filings arguing issues related to the attorney-client privilege, the common interest exception to waiver of privilege, and the work

---

[3] Plaintiff has voluntarily dismissed her claim for defamation against Popkov, Gimbel, and Kharasch. (Dkt. 73.)

product doctrine, the Court believes that there is a more fundamental problem with production of the documents Plaintiff seeks: relevance.[4] Federal Rule of Civil Procedure 26(b)(1) defines the appropriate scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit." Here, Plaintiff seeks, *inter alia*: 1) all correspondence between Kharasch's attorneys in this matter and various defendants, their attorneys, Village of Glenview officials and employees, and employees of the Glenview Police Department; and 2) all correspondence between Kharasch's attorneys in this matter relative to Plaintiff after they were retained by Kharasch, with the exception communications between Karasch and his attorneys.[5] (Dkt. 114-1.) Kharasch objected on the basis of relevance, among myriad other grounds, and then filed the instant motion seeking a protective order. Plaintiff does not articulate why these documents are likely to contain information relevant to Plaintiff's claims. The closest Plaintiff comes is by noting that "the custody litigation is part of this litigation" because "[b]ut for the charges, Andersen would not have been subjected to another petition for greater custody rights and/or two years of concurrent harassment in civil court (in addition to criminal court);" Plaintiff further notes that the custody proceedings continued after the complaint in the instant suit was filed. (Dkt. 120 at 13).

First, the Court believes that the Plaintiff's premise is a faulty one – the custody litigation is not a part of this litigation. While it has some bearing on this suit, it is a separate proceeding

---

[4] To be clear, the parties both discussed relevance in their submissions to the Court, but the main thrust of their arguments focused on issues related to privilege and waiver.
[5] The Court focuses on Plaintiff's Requests for Production Numbers 9 and 11, which were specifically cited in Kharasch's motion. However, this ruling applies with equal force to all post-litigation communications by Kharasch's attorneys.

3

from this one, and should be treated as such. Second, the Plaintiff's substantive allegations in the instant case are exclusively backwards-looking. They concern a conspiracy between Gimbel and Popkov to fabricate a stalking charge against the Plaintiff, and the resulting false arrest and malicious prosecution stemming from that conspiracy, as well as the comments Kharasch made to the Glenview Police Department regarding Plaintiff's mental health. Post-complaint communications from Kharasch's attorneys are unlikely to have any bearing on these substantive allegations. To the extent that the ongoing post-complaint custody battle has any bearing on this matter, it is limited to motive (*i.e.*, the reason for the conspiracy) and damages (*i.e.*, the emotional and financial toll the custody battle is taking on Plaintiff, and any changes in Plaintiff's custody rights). Regarding motive, the Court believes it extremely unlikely that post-complaint communications with Kharasch's attorneys are likely to bear any fruit on this issue. It is unclear precisely what relevant information Plaintiff hopes to obtain from these communications. Other than a proverbial smoking gun, wherein Gimbel, Popkov, or one of their attorneys openly admit to Kharasch's attorneys that they brought trumped up charges against the Plaintiff to gain a leg up in the custody battle, the Court is hard-pressed to see what the Plaintiff expects to learn from these communications. This is especially true for Kharasch's attorneys who are presumably more interested in the intentional infliction of emotional distress claims that would have no bearing on the issue of motive as it pertains to the custody proceedings at all. On the matter of damages, the best information will come from either Plaintiff herself on the issues of emotional distress or monetary damages, or publicly available information regarding the outcome of the custody dispute. It is improbable that Kharasch's attorneys' communications will shed any light on the measure of Plaintiff's damages.

       Finally, the burden and expense of the proposed discovery outweighs the likely meager

probative value described above.  Even if the Plaintiff is correct that the communications are not protected by the attorney-client privilege because they include third parties, the communications would still need to be reviewed for attorney work product.  Because the communications Kharasch seeks to protect are post-litigation documents from his attorneys, many (if not most) of the otherwise relevant documents will include counsel's mental impressions and thoughts on this suit.  They will need to be reviewed very closely to try and extract the relevant information that is not protected by the work product doctrine.  The burden of this review is too high to justify in light of the likely benefit to the Plaintiff.  Therefore, the Court finds that Defendants need not produce communications from their attorneys post-litigation nor identify them on a privilege log because they are not within the scope of discoverable information as defined in Rule 26(b)(1), and his Motion for Protective Order [114] is granted.

Entered: 5/4/18

_____

U.S. Magistrate Judge, Susan E. Cox