# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA ANDERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CV 05761 |
| | ) | |
| VILLAGE OF GLENVIEW et al, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This opinion addresses the last remaining claims arising from an unfortunate chapter in a long-running saga of divorce and ensuing battle for custody of the couple's children. Plaintiff Barbara Andersen brought suit pursuant to 42 U.S.C. § 1983 asserting various claims and theories of liability premised on an alleged scheme involving her ex-husband, defendant Rick Gimbel, and defendant Detective Jacob Popkov of the Glenview Police Department ("GPD") to have Andersen arrested and detained overnight to facilitate Gimbel's efforts to obtain custody of the couple's children. After most of Andersen's claims were dismissed for failure to state a claim, both defendants moved for summary judgment on the remaining claims pertaining to her overnight detention after being arrested on charges harassment and stalking charges. While Andersen's pique at being detained on criminal charges—all of which were unsuccessful—brought at the instigation of her former husband is quite understandable, she has failed to adduce sufficient evidence to sustain a jury verdict that her overnight detention on those charges was unconstitutional or that Gimbel's conduct was extreme and outrageous. Accordingly, the defendants' summary judgment motions are granted.

# BACKGROUND[1]

For purposes of this motion, the story begins on Tuesday, September 8, 2015 when Detective Popkov was assigned to investigate a complaint made by Rick Gimbel alleging that his ex-wife Barbara Andersen had made a series of threatening phone calls to Gimbel and others.[2] Popkov's Statement of Facts ("SOF") ¶ 7, ECF No. 216. It is undisputed that Popkov and another officer interviewed Gimbel on the night of September 8, *id.* ¶ 11, and that Popkov spoke with various other parties referenced in Gimbel's complaint the next day, September 9. *Id.* ¶ 13. On the evening of September 9, Gimbel sent an e-mail to Popkov stating that it was "[g]oing to be interesting on Friday" if Andersen were not arrested. *Id.* ¶ 29. According to Popkov, he did not know what Gimbel meant and disregarded the statement; according to Andersen, Gimbel and Popkov had reached an understanding to have Andersen arrested prior to September 11, 2015 so that Gimbel could take his minor children (as to whom Andersen then had custody) to a football game over Andersen's objection.[3] Andersen has not, however, adduced evidence of any response

---

[1] Andersen's responses to the defendants' statements of fact are replete with improper argument contesting the relevance of proffered facts and contesting the inferences that can be drawn from them. Her own statements of fact include allegations spanning the course of the years-long domestic disputes between Andersen and Gimbel despite the narrow scope of the only remaining issue in this case—specifically, whether the defendants conspired to unlawfully prolong Andersen's detention following her arrest on September 10, 2015. Accordingly, the Court declines to conduct a forced march in this opinion through every dispute Andersen raises. Unless otherwise noted, the facts presented in this section have either been expressly alleged or admitted by Andersen or the Court has considered and rejected her objections to consideration of the statement.

[2] To be clear, the phone calls relevant to the criminal charges brought against Andersen, and her claims in this case, were made in August and September 2015. Andersen disputes the relevance of any other calls (specifically, a series of calls she made in June 2015), Response to Gimbel SOF ¶ 10, ECF No. 221, and the Court has not considered those calls.

[3] The summary judgment record is not clear as to the date or location of this football game, but the Court understands from the record in this case generally that the game in question was at the University of Illinois on Saturday, September 12, 2015. See also https://www.sports-reference.com/cfb/schools/illinois/2015-schedule.html (last visited Sep. 8, 2019) (University of Illinois 2015 Schedule and Results, reflecting home game played on Sep. 12, 2015).

by Popkov to Gimbel's message or, indeed, any evidence that Popkov knew anything about a football game.

On 1:00 p.m. on Thursday, September 10, 2015, Detective Popkov arrested Andersen at her home[4] for misdemeanor telephone harassment as defined by 720 ILCS 5/26.5-2. This Court concluded in its prior ruling on the defendants' motions to dismiss that Popkov had probable cause for this warrantless arrest. *See Andersen v. Vill. of Glenview*, 17-CV-05761, 2018 WL 6192171, at *1 (N.D. Ill. Nov. 28, 2018). Popkov then took Andersen to the police station and by 1:30 p.m. began interviewing her. The interview lasted for approximately an hour and ten minutes, *id.* ¶ 17, during which time Popkov told Andersen that she would be detained overnight. *Id.* ¶ 18. Popkov also told Andersen that she would likely face felony stalking charges in addition to the misdemeanor telephone harassment charges, but that under Illinois law felony charges had to be approved by the State's Attorney. *See* 725 ILCS 5/111–2(a) ("All prosecutions of felonies shall be by information or indictment" while all others may be by information, indictment, or complaint); *Brown v. City of Chicago*, 713 F. Supp. 250, 251 (N.D. Ill. 1989) (Illinois Felony Review process requires the State's Attorney to review felony charges prior to probable cause hearing).

After the interview, Popkov reviewed additional materials provided by Gimbel and at some point called the Cook County State's Attorney. Andersen maintains that Popkov "purposefully wasted considerable time" by waiting until late that afternoon to initiate the felony review process. Pl.'s Resp. Br. 11, ECF No. 227. At 4:45 p.m., Felony Review Assistant State's Attorney Joseph Carlson arrived at the police department, spoke with Popkov, interviewed witnesses, and reviewed the case materials. Popkov's SOF ¶ 20. At approximately 8:00 p.m., Carlson approved a felony

---

[4] There is no dispute about the propriety of the arrest in Andersen's home. It is undisputed that Andersen admitted Popkov into the home.

stalking charge. Andersen was then processed and placed in a holding cell overnight. At 7:35 a.m. the next morning, she was taken to court. Finally, at 1:30 p.m., a little more than 24 hours after her initial arrest, she was released on her own recognizance with various conditions of release imposed. *Id.* ¶¶ 23, 24. The charges against her were ultimately resolved in her favor: the felony stalking charges (2 counts) were nolle prossed and Andersen was acquitted of the misdemeanor telephone harassment charge.

Andersen subsequently filed a 12-count complaint alleging, among other things, that Popkov conspired with Gimbel to arrest, detain, and prosecute her on trumped up felony stalking charges as part of Gimbel's ploy to win custody of their minor children in violation of the Fourth Amendment. The Court dismissed much of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) but concluded that Andersen had adequately stated a claim against Popkov for unconstitutionally prolonging her post-arrest detention and against Popkov and Gimbel for conspiring together to do so. The Court also concluded that Andersen stated a claim against Gimbel for state law intentional infliction of emotional distress ("IIED") arising out of his alleged campaign to have Andersen arrested and prosecuted. Shortly thereafter, Popkov and Gimbel each moved for summary judgment.[5]

## DISCUSSION

### I. Motion to Strike

Before addressing the merits of the summary judgment motions, the Court turns briefly to Andersen's motion to strike various exhibits submitted by the defendants. Specifically, Andersen seeks to exclude 1) video recordings of Andersen at the Glenview Police Department, 2) an e-mail

---

[5] Andersen did not seek summary judgment on the remaining claims or to amend any of the claims the Court previously dismissed without prejudice.

and transcripts from third-party witnesses offered to support Gimbel's contention that his complaints about Andersen were made in good faith, and 3) audio recordings of the voice messages left by Anderson. Because the Court does not rely on any of the challenged exhibits in granting the defendants' motions for summary judgment, it is not necessary to rule on the motion to strike. The motion is accordingly denied as moot.

## II. Motion for Summary Judgment

Moving on, then, to the motions for summary judgment: summary judgment is warranted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmovant must come forward with "specific facts showing that there is a genuine issue for trial." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006). A mere "scintilla" of evidence in support of the nonmoving party's position is insufficient; the nonmovant must present evidence which could support a jury verdict in her favor. *Id.*

The primary issue here is whether Detective Popkov unreasonably prolonged the length of Andersen's post-arrest, pre-probable cause hearing detention. While officers may detain suspects for brief periods after warrantless arrests made pursuant to "on-the-scene" probable cause assessments, "the Fourth Amendment requires a [prompt] judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). A delay of 48 hours or less is presumed to be reasonable, *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), so it is Andersen's burden to establish that her 24-hour period of detention was unreasonable. *Portis v. City of Chicago, Ill.*, 613 F.3d 702, 704 (7th Cir. 2010). She has not done so.

Popkov maintains in his motion for summary judgment that it was reasonable to hold Andersen overnight because a judge was required to set bond before Andersen could be released

5

given the nature of the charge and that could not happen until the following day. As explained by Popkov, while the Illinois Supreme Court may prescribe "a uniform schedule of amounts of bail" in misdemeanor cases such that arrestees charged with minor offenses can bond out from the police station without having to appear in court, *see* 725 ILCS 5/110-15 *and People v. Zlatnik*, 29 Ill. App. 3d 498, 499, 331 N.E.2d 1, 3 (4th Dist. 1975), Illinois Supreme Court Rule 528 provides that bail for certain misdemeanor domestic offenses ***must*** be set by a judge. Ill. S. Ct. R. 528. Although Andersen does not raise this issue, it is worth noting that Rule 528 states only that a judge must set bail "for the offense of domestic battery, a violation of an order of protection, or any similar violation of a local ordinance." *Id.* It says nothing about the Illinois misdemeanor telephone harassment statute. Had Andersen been charged only with the misdemeanor, then, she may have been entitled to bond out directly from the police station. *See Lampe v. Ascher*, 59 Ill. App. 3d 755, 761, 376 N.E.2d 74, 78 (4th Dist. 1978) (police officers have no discretion in accepting a bond once it has been set by Supreme Court rule).[6]

No matter. Andersen was also facing felony stalking charges (for which there is no uniform bail schedule), and it is undisputed that the State's Attorney had to approve those charges before Andersen could be taken before a judge. GPD procedure, moreover, specifies that an officer may not release a prisoner on an I-Bond—*i.e.* personal recognizance—when the individual is charged with a felony. *See* Popkov's Ex. 12, ECF No. 216-12 (GPD General Order No. 88-37). Further, according to Popkov's affidavit, the bond court call for criminal domestic cases in September 2015 was at 1:30 p.m., which had already passed by the time Andersen arrived at the police station. *See*

---

[6] Popkov states that GPD policy prohibits officers from releasing individuals "on bond" when the individual is charged with any misdemeanor that is domestic in nature, Popkov's SOF ¶ 34, but the policy to which he cites states only that ***I-bonds*** will not be authorized for domestic related misdemeanors; it does not refer to bond generally. *See* Popkov's Ex. 12, ECF No. 216-12 (GPD General Order No. 88-37).

Popkov's Ex. 3 ¶ 18, ECF No. 216-3.[7] Popkov maintains that Illinois law and GPD policy therefore required him to detain Andersen until she could be seen by the bond court the next day. *See also Riverside*, 500 U.S. at 54 (explaining that *Gerstein* permits states to incorporate probable cause determinations into the procedure for setting bail).

Andersen does not challenge the existence or applicability of these policies. Rather, she challenges Popkov's assertion that he relied on them, noting that in his prior motion to dismiss, Popkov justified the detention on grounds of the Illinois Domestic Violence Act, 750 ILCS § 60-101, *et seq.* rather than Illinois bond procedure and GPD General Orders, a point to which Popkov does not meaningfully respond. The point, however, is essentially irrelevant: while shifting justifications might suggest that Popkov's subjective motivation in detaining Andersen was not premised on administrative procedures, Andersen has not shown that a different, improper motive caused a delay because she has not adduced any admissible evidence demonstrating that an earlier court hearing was available.[8] In other words, nothing in the record suggests that the length of Andersen's detention would have been shorter had Popkov not engaged in alleged delay tactics with respect to the felony review process, which seems to be her chief complaint.

In any case, Andersen has not produced sufficient evidence to support a finding that the felony review process was in fact unreasonably delayed. For instance, Andersen questions why

---

[7] Andersen's argument that Popkov has "no competency" to testify to this fact, *see* Response to Popkov's SOF ¶ 38, ECF No. 226, is misplaced. By virtue of his position as a detective, Popkov's averment that he has personal knowledge regarding bond hearing schedules at the courthouse in his jurisdiction suffices to establish his competency to testify to this fact.

[8] Andersen maintains that she called the presiding judge's office at the courthouse and was told that police officers may seek permission to alter the time for bond calls. Anderson's Statement of Additional Statement of Facts in response to Popkov's Mot. for Summary Judgment ¶ 40, ECF No. 226. This is plainly inadmissible hearsay not supported by any other evidence and will not be considered for purposes of this motion. *See Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) (evidence offered at summary judgment must be admissible to the same extent as at trial).

7

Popkov did not initiate the process prior to her arrest, but there is nothing inherently unreasonable about waiting until after an arrest is made to call the Felony Review State's Attorney. *See Bailey v. City of Chicago*, 779 F.3d 689, 693 (7th Cir. 2015) (detention not unreasonable where principal cause of delay was policy requiring felonies to be reviewed by the State's Attorney). Andersen also maintains that Popkov obstructed her access to the State's Attorney once he arrived at the station, but she has not cited to any authority (and the Court is aware of none) holding that an arrestee is entitled to speak with the prosecutor before charges are approved. Finally, Andersen suggests that Popkov met with witnesses while she was in custody in order to justify her arrest after the fact, as evidenced by Popkov's "inappropriate conduct." Pl.'s Resp. Br. at 12. Along those lines, Andersen requests that the Court reconsider its ruling that Popkov had probable cause to arrest her in light of her challenges to the authenticity of the evidence upon which Popkov relied. Pl.'s Resp. Br. 3 n.1, ECF No 227. As the Court explained in its prior ruling, however, the authenticity of the evidence is irrelevant to the probable cause analysis because the test for probable cause is "what the police know, not whether they know the truth," *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994). Even if the audio files had been tampered with before the police obtained them, Andersen has not shown (nor does she argue) that Popkov knew so prior to arresting her. There is therefore no need to revisit the Court's probable cause determination, and the fact that Popkov met with witnesses while Andersen was in police custody is thus of no moment. *See United States v. Daniels*, 64 F.3d 311, 314 (7th Cir. 1995) (calling it "ludicrous" to argue that *Gerstein* prohibits law enforcement from bolstering its case against a defendant awaiting a hearing where probable cause to arrest defendant already existed).

Anderson next argues that the detention was unreasonable because Popkov purposely timed the arrest to ensure that Andersen would be detained overnight and lose custody of her children

over the weekend so that Gimbel could take them to a football game. *See* Response to Popkov's SOF ¶ 34, ECF No. 266; Pl.'s Resp. Br. at 5. As an initial matter, Andersen supplies no authority holding that such a theory is even cognizable. As explained in its prior ruling, pretextual motives for effectuating an arrest are irrelevant so long as probable cause exists. *See Whren v. United States*, 517 U.S. 806, 806 (1996). What's more, *Gerstein* was concerned with judicial determinations of probable cause being unreasonably **delayed**; in a different context, the Supreme Court noted that there can be no "delay" until there is an obligation to bring an individual before a judicial officer in the first place, and there is no such obligation until an arrest occurs. *United States v. Alvarez-Sanchez*, 511 U.S. 350, 358 (1994). And specifically to Andersen's point, "a suspect has no constitutional right to be arrested earlier than the police choose." *United States v. Cravero*, 545 F.2d 406, 413 (5th Cir. 1976) (citing *Hoffa v. United States*, 385 U.S. 293, 310 (1966) ("There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect . . . . "). *See also*, *e.g.*, *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008) (rejecting arguments that police were required to arrest defendant "the moment they had probable cause to do so" and that their subjective motivation for conducting arrest at the time they did "is irrelevant as long as they had probable cause"). Popkov's subjective reasons for arresting Andersen at a specific time are irrelevant; Andersen's claim turns not on that subjective inquiry but on the objective inquiry of whether Popkov's actions unreasonably extended the length of the post-arrest detention.

Even were the timing of the arrest relevant to Andersen's unreasonable detention claim, moreover, the record does not support her argument that Popkov timed the arrest to facilitate Gimbel's ability to spirit his children away to a football game. Specifically, Andersen asserts that the fact that Popkov arrested her in the early afternoon on September 10 (knowing that she would

9

be held overnight) instead of doing so first thing in the morning (so that she could be processed and released the same day) shows that Popkov unreasonably prolonged the length of her detention. But Popkov testified that his assigned shifts for the week he arrested Andersen did not begin until 11:00 a.m., Popkov's SOF ¶ 3, and a one-off work e-mail sent by Popkov at 9:58 a.m. on the morning of September 9, *see* Plaintiff's Ex. 3, ECF No. 226-4, does not suggest that he lied about when his shift began or deliberately elected to hold off on arresting Andersen until he could be sure that she would be detained overnight.

More importantly, Andersen has not produced any evidence from which a jury could reasonably infer that Popkov engineered Andersen's detention overnight in order to facilitate Gimbel's plan to obtain child custody, and that is the crux of her entire theory. In support of her claim, Andersen relies almost exclusively on the September 9 e-mail Gimbel sent to Popkov stating that it would "be interesting on Friday" if Andersen were not arrested. But even if (taking all inferences in Andersen's favor) the e-mail suggests some malintent on the part of Gimbel, Andersen has not offered any evidence suggesting that Popkov was a willing participant in this ploy. To the contrary, she has adduced no evidence that Popkov prompted this communication, or responded to it, or knew anything about a football game (to which the message makes no reference). If anything, the text of the message supports an inference that Popkov had not yet decided to arrest Andersen, as it suggests that Gimbel was urging him to do so.[9] Further, the undisputed facts show that Popkov was assigned the case on a Tuesday, investigated the case on Tuesday and Wednesday, and arrested Andersen shortly after his shift began on Thursday—had

---

[9] That Gimbel, in Andersen's words, "solicited" Popkov to arrest Andersen, Response at 5, is not probative of a conspiracy between the two than; the same could be said of most people who report to the police that they are victims of a crime.

Popkov wanted to deprive Andersen of child custody over the weekend in accordance with Gimbel's wishes, one would think that he would have waited until Friday to arrest her.

That leaves only Andersen's attempt to call Popkov's credibility into question, which she does by pointing to her own affidavit in which she asserts that Popkov "inappropriately socialized" with Gimbel at her bond hearing and lied throughout her criminal proceeding. *See* Anderson's Statement of Additional Statement of Facts in response to Popkov's Mot. for Summary Judgment ¶¶ 9, 37, ECF No. 226. Summary judgment, however, is not appropriate "when challenges to witness' credibility are ***all*** that a plaintiff relies on." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (emphasis in original).

Finally, Andersen spends a substantial portion of her brief arguing that Popkov violated the Fourth Amendment by initiating "trumped up" felony stalking charges against her. Pl.'s Resp. Br. at 8-11. The Court, however, has already dismissed Andersen's constitutional challenge to the filing of felony stalking charges because "there is no such thing as a constitutional right not to be prosecuted without probable cause," *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013), and in any case, probable cause for the charges existed. *See Andersen*, 2018 WL 6192171, at *15 (N.D. Ill. Nov. 28, 2018). Further, the record shows that it was the ASA, not Popkov, who approved the stalking charge after his own review of the evidence.

In short, Andersen has not met her burden of showing that Popkov unreasonably prolonged her post-arrest detention, so summary judgment on that claim must be granted in his favor. And because there can be no conspiracy without an underlying constitutional violation, *Indianapolis*

*Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999), both Popkov's and Gimbel's motions for summary judgment are granted with respect to that claim.[10]

The determinations that Gimbel's claims of harassment were supported by probable cause and that Andersen's detention was lawful similarly warrant judgment in Gimbel's favor on Andersen's IIED theory. Without the predicate of a baseless effort to have her arrested and detained on criminal charges, Andersen's theory fails; Gimbel's statements to others (the statements are not alleged to have been made directly to Andersen) about Andersen's mental state, she maintains, caused her extreme emotional distress because they were part of Gimbel's scheme to deprive her of custody of her children. Response at 19 (IIED claim based on "Gimbel's multi-year harassment of Andersen with his connections with the police, by using his medical license to defame Andersen's mental health and by soliciting frivolous charges so that he could harass her both in criminal court and further his custody scheme"). Andersen may be correct when she argues (Response at 19) that pursuing baseless criminal charges against someone can support an IIED claim. *But see, e.g., Hoffman v. Hoffman,* 2011 IL App (2d) 101005-U ¶ 18 (false allegations of sexual abuse by one former spouse against the other not extreme and outrageous because spouse making allegation "had a legitimate objective to protect her children when she reported suspected

---

[10] The Court also grants Detective Popkov's motion on the grounds of qualified immunity. "Qualified immunity is an affirmative defense, and once raised, the plaintiff bears the burden of defeating it by showing: (1) the defendant violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). "A failure to show either is fatal for the plaintiff's case." *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017). As discussed, Andersen has failed to show a violation of a constitutional right, but even if she had, to defeat Popkov's qualified immunity defense, she would also be required to demonstrate that the right was clearly established at the time. *Id*. at 419. Andersen, however, has made no attempt to do so; she does not discuss this requirement, much less identify any precedent establishing that it was clearly established at the time that Popkov's conduct (however defined) violated the Fourth Amendment. Accordingly, Popkov is entitled to qualified immunity.

abuse to the appropriate authorities"); *Layne v. Builders Plumbing Supply Co., Inc.*, 210 Ill. App. 3d 966, 971-73, 569 N.E. 2d 1104 (1991) (filing false police report deemed inadequate to support IIED liability). But here, for the reasons discussed, Gimbel's efforts to have Andersen prosecuted, though unsuccessful, were not baseless: the charges were supported by probable cause and the detention was not unreasonable. To succeed on a theory of intentional infliction of emotional distress, a plaintiff must prove that the defendant engaged in conduct so outrageous that it goes "beyond all bounds of decency" and is "considered intolerable in a civilized community." *Fox. v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). Lawfully pursuing criminal charges falls short of this demanding standard. Andersen has cited no case affirming the existence of an IIED claim predicated on the lawful pursuit of criminal charges and this Court is aware of none.[11] Andersen's IIED claim that Gimbel engaged in a baseless "campaign to have her falsely arrested and prosecuted so that she would lose custody over her children," MTD Order at 43, cleared the hurdle of Gimbel's motion to dismiss because she stated a plausible claim that her detention violated the Fourth Amendment. Having now concluded that both Andersen's arrest and detention were lawful, the Court also concludes that the IIED claim fails on summary judgment. As a matter of law, Gimbel's actions were not extreme and outrageous.

\* \* \*

---

[11] Any such holding would also stand in considerable tension with privileges recognized under Illinois law for reporting misconduct to law enforcement, whistle-blowing, and the like. *See, e.g., Vincent v. Williams*, 279 Ill. App. 3d 1, 7, 664 N.E.2d 1207 (1996) ("It has long been held that statements made to law enforcement officials, for the purpose of instituting legal proceedings, are granted absolute privilege.").

For the reasons stated above, the defendants' motions for summary judgment are granted. Judgment will be entered in favor of the defendants.

Dated: September 9, 2019

John J. Tharp, Jr.
United States District Judge